**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 05 CR 727 |
| ) | |
| CONRAD M. BLACK, JOHN A. ) | |
| BOULTBEE, PETER Y. ATKINSON, ) | |
| MARK S. KIPNIS, and THE RAVELSTON ) | |
| CORPORATION LIMITED, ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM OPINION AND ORDER**

AMY J. ST. EVE, District Court Judge:

The government has moved to introduce "intricately related" and "other act" evidence under Fed. R. Evid. 404(b) ("Rule 404(b)"). In particular, the government seeks to introduce the following alleged "acts:" 1) Defendant Black's attempt to remove the independent Board of Directors and stop the investigation by the Special Committee; 2) Defendant Black's continued attempts to prevent the government from receiving the 13 boxes of documents at issue in Count Fourteen; 3) Defendant Blacks's and Radler's $50,000 payment to Defendant Kipnis as a bonus for the CanWest transaction; 4) Defendant Black's 1982 Securities & Exchange Act ("SEC") violation; 5) Defendant Black's anonymous response to an internet posting; 6) Defendant Black's purchases of certain memorabilia with International's money; 7) Defendant Black's personal dinners at Le Cirque; 8) Defendant Black's abuse of International's charitable giving; 9) Defendant Black's wife's personal shopping expenses paid for by International; 10) Defendant Black's insider trading; and 11) Defendant Black's false statements to the Court. For the reasons stated below, the Court grants the government's motion in part and denies it in part.

## BACKGROUND

On August 17, 2006, a grand jury returned a seventeen-count third superseding indictment (the "Indictment") naming four individual Defendants – Conrad M. Black, John A. Boultbee, Peter Y. Atkinson, Mark S. Kipnis – and a corporate Defendant, the Ravleston Corporation Limited (collectively, "Defendants"). The Indictment charges that Defendants committed the following offenses: 1) mail and wire fraud, in violation of 18 U.S.C. §§1341, 1343, including the deprivation of the intangible right to honest services, in violation of 18 U.S.C. §1346; 2) money laundering, in violation of 18 U.S.C. §1957; 3) obstruction of justice, in violation of 18 U.S.C. §1512(c)(1); 4) racketeering, in violation of 18 U.S.C. §1962(c); and 5) criminal tax violations, in violation of 26 U.S.C. §7206(2). On January 10, 2007, the government filed a Superseding Information (the "Information") that included identical substantive charges, with some redactions pursuant to the Court's prior orders.

Counts One through Nine charge mail and wire fraud schemes, including the deprivation of the intangible right to honest services.[1] These counts allege that Defendants defrauded Hollinger International, Inc. ("International")[2] through an elaborate scheme involving non-competition agreements. Namely, in May of 1998 and continuing through 2001, International embarked on a business plan to sell off nearly all of its United States community newspaper assets. In connection with the sale of each of these assets, International executed a non-

---

[1] For a more detailed explanation of the charges, *see United States v. Black*, __ F. Supp. 2d __, 2006 WL 3797717, **4-11 (N.D. Ill. Dec. 21, 2006).

[2] International is a Delaware corporation that, through its operating subsidiaries, owned and published newspapers around the world, including the *Chicago Sun-Times*, *The Daily Telegraph* in the United Kingdom, the *National Post* in Toronto, Canada, the *Jerusalem Post* in Israel, and numerous community newspapers in the United States and Canada.

competition agreement in which it promised not to acquire or establish a newspaper within a certain geographic distance from the newspapers it sold for a certain period of time after the sale at issue. According to the Information, Defendants abused this process to benefit themselves at the expense of International's shareholders by inserting themselves and Hollinger Inc. ("Inc.")[3] as recipients of non-competition fees that should have, and otherwise would have, been paid exclusively to International.

Counts Ten through Twelve charge Defendants Black and Boultbee with three separate counts of wire fraud in connection with a scheme to defraud International and its shareholders by abusing certain perquisites, including International's corporate residence in New York City, International's corporate jet, and International's reimbursement of Black's business-related entertainment expenses.

Count Thirteen charges Defendant Black with money laundering, in violation of 18 U.S.C. § 1957. Count Fourteen charges Defendant Black with obstruction of justice in connection with his alleged removal of 13 boxes of documents from his office at 10 Toronto Street. Finally, Count Fifteen charges Defendant Black with a RICO violation. It alleges that Defendants Black, Radler, Boultbee, Atkinson, Kipnis and Ravelston constituted an "association-in-fact" enterprise, and that Defendant Black conducted and participated in the conduct of the affairs of this enterprise through a pattern of racketeering activity.

The government seeks to admit eleven separate acts primarily against Defendant Black as

---

[3] Inc. is a Canadian corporation with its principal office located in Toronto, Canada. At all times relevant to the Information, Inc's primary asset was its interest in International – Inc. held approximately 30% of International's equity and controlled a majority of International's stock voting power.

inextricably intertwined with these charges and/or pursuant to Rule 404(b).

## LEGAL STANDARD

"Generally, evidence of other bad acts is not admissible to show a defendant's propensity to commit a crime, nor to show that he or she acted in conformity with that propensity on the occasion in question." *United States v. James*, 464 F.3d 699, 709 (7th Cir. 2006); Fed. R. Evid. 404(b) ("[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith"). Put another way, Rule 404(b) "forbids the use of evidence of a defendant's history of illegal or unethical acts to prove that he is a person of bad character and likely therefore to have committed the crime of which he is accused in the present case, or perhaps some other, undetected crime for which he should be punished." *United States v. Paladino*, 401 F.3d 471, 474-75 (7th Cir. 2005). "[E]vidence may, however, be admitted under Rule 404(b) to establish proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." *James*, 464 F.3d at 709. *See also United States v. Leahy*, 464 F.3d 773, 797 (7th Cir. 2006). In determining whether evidence is admissible pursuant to 404(b), the Seventh Circuit has adopted a four-part standard, assessing whether:

> (1) the evidence is directed toward establishing a matter in issue other than the defendant's propensity to commit the crime charged, (2) the evidence shows that the other act is similar enough and close enough in time to be relevant to the matter in issue, (3) the evidence is sufficient to support a jury finding that the defendant committed the similar act, and (4) the probative value of the evidence is not substantially outweighed by the danger of unfair prejudice.

*United States v. Kreiser*, 15 F.3d 635, 640 (7th Cir. 1994); *Leahy*, 464 F.3d at 797.

Further, "[i]f the evidence of other crimes or bad acts provides direct or inextricably intertwined evidence (often referred to as intricately related evidence) of the acts charged, it is

not subject to the constraints of Rule 404(b)." *James*, 464 F.3d at 709; *United States v. Lane*, 323 F.3d 568, 579 (7th Cir. 2003) ("[C]ases applying the 'intricately related' doctrine have recognized that evidence concerning the chronological unfolding of events that led to an indictment, or other circumstances surrounding the crime, is not evidence of 'other acts' within the meaning of Rule 404(b)."). "Under the 'intricately related evidence' doctrine, the admissibility of uncharged conduct turns on whether the evidence is properly admitted to provide the jury with a complete story of the crime on trial, whether its absence would create a chronological or conceptual void in the story of the crime, or whether it is so blended or connected that it incidentally involves, explains the circumstances surrounding, or tends to prove any element of the charged crime." *James*, 464 F.3d at 709. "Although inextricably related evidence does not have to satisfy 404(b), it still must satisfy the balancing test of Rule 403." *Lane*, 323 F.3d at 579; *United States v. Hale*, 448 F.3d 971, 985 (7th Cir. 2006).

With these principles in mind, the Court will address each category of evidence the government seeks to introduce pursuant to Rule 404(b) or as "intricately related" evidence.

## ANALYSIS

**I.    Alleged Efforts to Remove International's Board of Directors and Stop the Special Committee's Investigation**

The government seeks to introduce evidence that, in January 2004, Defendant Black – who remained Chairman of International – took certain steps to interfere with the Special Committee's investigation and to render International's Board of Directors powerless. Among other things, the government intends to introduce evidence that Defendant Black attempted: 1) to eliminate a Corporate Review Committee approved by International's Board; 2) to require unanimous consent by the Board for certain corporate actions; 3) to change the composition of

the Board of Directors; 4) to abrogate certain powers given to the Special Committee that was investigating the non-compete payments; and 5) to require 24 hours notice to International's Board of Directors (including Defendant Black and his wife) of any Special Committee meeting. The government argues that these actions are inextricably intertwined with the allegations in the Information because they demonstrate Defendant Black's attempt to cover up his crimes and halt the investigation by the Special Committee into these crimes. The government further argues that under Rule 404(b) these actions show Defendant Black's intent and knowledge of the impropriety of the non-competition payments. The Court agrees.

In June 2003, the Special Committee formed to investigate Defendants' alleged scheme to defraud International of non-competition payments and the alleged abuse of corporate perquisites. In late 2004, the Committee published a lengthy report detailing the results of its investigation. The above evidence that the government intends to introduce suggests that, amidst this investigation, Defendant Black took certain steps to impede the Special Committee and, derivatively, to cover up his wrongdoing. Thus, this evidence is admissible under Rule 404(b) and as intricately related evidence. *See, e.g., United States v. Ryan*, 213 F.3d 347, 351 (7th Cir. 2000) (defendant's efforts to conceal participation in a bank fraud scheme "constituted circumstantial evidence of intent to defraud . . . also tended to cast doubt on the credibility of [the] defense that he advanced at trial – that he was ignorant of the fraudulent aspects of the transactions" (internal quotation and citation omitted)). *See also United States v. Senffner*, 280 F.3d 755, 764 (7th Cir. 2002) ("Acts satisfy the inextricably intertwined doctrine if they complete the story of the crime on trial; their absence would create a chronological or conceptual void in the story of the crime; or they are so blended or connected that they incidentally involve, explain

the circumstances surrounding, or tend to prove any element of, the charged crime.").

Accordingly, the Court grants this portion of the government's motion.[4]

## II.     Actions Taken Regarding the 13 boxes of Documents at Issue in Count Fourteen

Count Fourteen charges Defendant Black with concealing and attempting to conceal the content of 13 boxes from inside offices at 10 Toronto Street "with the intent to impair their availability for use in official proceedings, namely the SEC proceeding against BLACK, the criminal investigation of BLACK by a Federal grand jury and the pending criminal proceeding against BLACK before a judge and court of the United States." It alleges that he improperly took 13 boxes of documents from 10 Toronto Street on or about May 20, 2005. In response to a Canadian Court order, Defendant Black's counsel returned the boxes to the Canadian Inspector on or about May 26, 2005.[5]

Defendant Black's attorneys have moved to quash two separate subpoenas issued by the government for the contents of the 13 boxes. The government withdrew one of these subpoenas and the Court denied the motion to quash with respect to the one other. In addition, the government filed an MLAT request with Canada for the return of the 13 boxes on August 26, 2006. Defendant Black's counsel has taken various legal actions in Canada with the Canadian

---

[4] In addition, the Court is mindful of Defendant's concern that a mini-trial will result, but it accepts the government's representation that this evidence involves limited testimony from witnesses who already are testifying in this case.

[5] The government also asserts that Baker, Botts, L.L.P. (Defendant Black's counsel) failed to comply with the Court's March 30, 2006 order regarding production of copies of documents from the 13 boxes. Defendant denies this assertion. The appropriate vehicle to address this allegation is a motion for a rule to show cause, a motion to compel, or a motion for sanctions before the Court for failure to comply with the Court's order. To date, the government has not filed any such motion.

court to block the return of the documents pursuant to the MLAT request.

The government argues that evidence of Defendant Black's continued efforts to prevent the government from obtaining the 13 boxes of documents he allegedly removed from 10 Toronto Street in May 2005 is inextricably intertwined with the charges in the Information, and alternatively, admissible under Rule 404(b) as evidence of Defendant Black's intent and absence of mistake to deprive United States law enforcement of the documents. As Defendant notes, however, the evidence the government intends to introduce relates only to actions taken by Defendant's attorneys in Canadian legal proceedings. The government does not contest that Defendant's attorneys were asserting legal arguments on their client's behalf in the Canadian proceedings. Although Defendant's attorneys are his agents and thus the evidence might be admissible against Defendant Black, the assertion of certain legal arguments at best has merely negligible probative value as to whether Defendant intended to impair the SEC proceeding. Moreover, whatever limited probative value there is would be far outweighed by prejudice and the risk of jury confusion – the jury easily could underestimate the propriety of asserting colorable legal contentions in collateral proceedings. Accordingly, admission of this evidence under these facts is not appropriate.

Finally, the Information charges Defendant Black with obstructing justice by, in part, taking the boxes from the 10 Toronto Street offices on May 20, 2005. Although the Court is denying the government's request to admit evidence of legal actions taken by Defendant Black's attorneys under Rule 404(b), this ruling does not preclude the government from asking questions of witnesses if Defendant opens the door to this issue on cross examination or during his case in chief. In other words, the government cannot present this evidence as inextricably intertwined

with the charge or pursuant to Rule 404(b). If Defendant Black, however, questions witnesses about what happened to the documents after Defendant Black removed them from 10 Toronto Street, the government may be entitled to explore this area, especially if the government has not obtained the documents through the Canadian process when the trial commences.

**III.    $50,000 Payment to Defendant Kipnis**

The government contends that on April 28, 2003 – approximately two and one-half years after the CanWest transaction closed – co-schemer Radler gave Defendant Kipnis a $50,000 check that was a "bonus" from Radler and co-defendant Black for Kipnis' role in the CanWest transaction. The check was drawn on a Sterling Newspaper Company bank account. In a July 14, 2004 letter to the Special Committee, Mr. Sugarman – one of Defendant Kipnis' attorneys – described the check as a "bonus" for the CanWest transaction from Black and Radler. Defendant Kipnis does not contest the admissibility of this evidence under Rule 404(b), but Defendant Black does.

The government argues that this evidence is both inextricably intertwined with the charged offense and admissible under Rule 404(b) as evidence of motive. The Court agrees.

First, the payment to Defendant Kipnis is part of the "story of the crime," and thus admissible. *See United States v. Lott*, 442 F.3d 981, 985 (7th Cir. 2006) (act is inextricably intertwined if "it is necessary to complete the story of the crime on trial"). The evidence completes the "story" because it shows how Defendant Kipnis was compensated for his alleged actions. *See United States v. Spaeni*, 60 F.3d 313, 316 (7th Cir. 1995). *See generally United States v. Senffner,* 280 F.3d 755, 764 (7th Cir. 2002).

Second, the evidence is admissible under Rule 404(b) as evidence of Defendant Kipnis'

9

motive to engage in the alleged fraud with his co-Defendants and co-schemers. The bonus check could establish a financial motive for Kipnis to be loyal to his co-Defendants, rather than International. As such, it is admissible. *See United States v. Kuzlik*, 468 F.3d 972, 975 (7th Cir. 2006) (affirming admission of financial evidence as evidence of motive).

Defendant Black's argument that Mr. Sugarman's letter is inadmissible hearsay as to him is an evidentiary issue that the Court will address at trial.[6] As the government suggests, it may be appropriate to redact Defendant Black's name from the letter, but this argument does not render this evidence inadmissible under Rule 404(b).

**IV.     1982 Securities & Exchange Act Violation**

The government seeks to introduce evidence that in 1982, a federal court in the Northern District of Ohio found that Defendant Black, as Chairman of the Board and a controlling shareholder of Noreen Energy Resources Limited, had violated federal securities laws by hiding Noreen's intent to acquire a controlling stake in Hanna Mining Company, a target corporation. The government intends to argue that the Hanna Mining case had a significant impact on Defendant Black's conduct at International's board meetings.

The government argues that this 25 year old conduct is "close enough in time" to Defendant Black's alleged actions in this case. This argument, however, is a stretch under clear Seventh Circuit precedent. Although the Seventh Circuit has not set an outer proximity limit for admissible Rule 404(b) evidence, it has never held that evidence from 25 years ago would satisfy this essential requirement that the evidence be "close enough in time to be relevant to the matter

---

[6] Given Mr. Radler's cooperation, the government undoubtedly has more evidence regarding this payment than just the letter from Mr. Sugarman.

in issue." In fact, in *United States v. Polichemi*, 219 F.3d 698, 709 (7th Cir. 2000), the Seventh Circuit held that "conduct that occurred more than 10 years prior to the charged conduct" was "at the outer edges of the requirement for Rule 404(b)" evidence. This is especially true where, as here, the evidence is not identical to the charged crime. *Id. See also United States v. Wimberly*, 60 F.3d 281, 285 (7th Cir.1995) (13-year gap close enough nexus where evidence nearly identical to the charged crime). The government's motion is therefore denied.

## V. Anonymous Response to an Internet Posting

On approximately May 5, 1998, a message was posted on the Yahoo! Finance message board regarding Hollinger International, with a subject line of "Why is the stock price not moving?" The May 5, 1998 message noted that "the company has well over 100% increase in earnings over the same quarter last year . . . and everything seems to be very strong and positive." After International's Vice President of Investor Relations proposed a response stating that "[o]ur share price reflects the public's short and long-term prognosis, along with other factors including industry multiple valuations and global market concerns," Defendant Black rejected the proposal and subsequently told the Vice President "Paul, don't be so strait-laced. If you must put it on from somewhere else and sign it anonymously, as the question was."

Pursuant to Rule 404(b), the government has moved to introduce evidence that on or about May 19, 1998, Defendant Black responded to the May 5, 1998 message by posting an anonymous response on the Yahoo! Finance message board under the name "enspector," which stated:

> The HLR common stock is being temporarily influenced by those who by[sic] the HLR PRIDES,' a convertible preferred security, and short sell the common to pocket the dividend spread plus any accretion of stock value. The company's management reviewed this fact on their Q-1 conference call and suggested that this activity will likely stop in

11

>the next few weeks so that the company's 70% rise in share-price over the last year will resume.

The government argues that this evidence demonstrates Defendant Black's knowledge of restrictions on his conduct as an officer of a publicly traded corporation, and to show his disregard for the rules governing public disclosures. As such, the government wants to introduce this evidence to show an absence of mistake and to counter any defense that Defendant Black was too high up to be involved in the details of International. The government further asserts that this conduct is "highly probative of Black's involvement in the particulars of his company's affairs." The Court agrees.

Defendant's argument that the government only seeks to introduce this evidence for propensity purposes is not persuasive. The Information alleges that Defendant had an obligation to fully and accurately disclose related party transactions and compensation in SEC filings and to shareholders, but that Defendants, as part of the scheme, intentionally failed to do so. The internet posting is also being offered to demonstrate Defendant Black's intent to violate disclosure rules. It is also relevant to the absence of any mistake or accident in failing to appropriately disclose the non-compete payments at issue in the Information. Further, this evidence is relevant to Defendant Black's knowledge of the affairs of the company and his involvement in the details of the company.

Contrary to Defendant's suggestion, the government has sufficient proof as set forth in its reply to present this issue to the jury. Specifically, the government has represented that it will present evidence that Defendant sent the Vice President of Investor Relations a draft of a proposed response to post on the message board. The next morning, the "anonymous" message was posted and it contained "word for word" the language proposed in Defendant's draft to the

Vice President. This is sufficient circumstantial evidence to meet the requirements of Rule 404(b).

**VI.     Memorabilia of President Franklin D. Roosevelt**

The government further argues that the Court should admit evidence that Defendant Black had International purchase presidential papers and other memorabilia of President Franklin D. Roosevelt ("FDR"), and used such memorabilia for his personal use. According to the government, Defendant Black purchased this memorabilia with International's money for more than $9.6 million, including $8 million for the acquisition of the Grace Tully Collection, without obtaining prior approval of the Board or the Audit Committee. Approximately two years after the acquisition, Defendant Black had the Executive Committee ratify the purchase of the Tully Collection. Defendant Black, however, allegedly maintained the memorabilia at his personal residence, not at International's offices. In addition, the government claims that he used it to write a biography of FDR.

The government argues that this evidence is direct evidence of the perquisites scheme charged in Count Ten of the Information. It further argues that such evidence is admissible as a pattern of conduct, or *modus operandi* under Rule 404(b).

Even if this evidence is relevant, the parties' submissions demonstrate that this issue is convoluted and complex. In essence, it will result in a mini-trial and undue delay within this anticipated lengthy trial. For example, this topic will raise side issues about why Defendant Black wanted to purchase the collection for personal reasons, what was the fair market value of the FDR memorabilia at the time, who was responsible for any overvaluation, whether the alleged overvalue was the result of poor negotiations rather than fraud, and what happened to the

13

memorabilia. Any probative value from this complex proof is substantially outweighed by the danger that it will confuse or mislead the jury and cause undue delay at trial. *See United States v. Senffner*, 280 F.3d 755, 764 (7th Cir. 2002). Accordingly, the government's motion is denied.

## VII. Personal Dinners at Le Cirque

According to the government, Defendant Black had personal dinners with friends at Le Cirque, a well know restaurant in New York City. International, not Defendant Black, allegedly paid for these dinners even though they were personal and not related to International's business. The government argues that this evidence is admissible pursuant to Rule 404(b) to show Defendant Black's intent to have International pay for his personal expenses such as his wife's party at La Grenouille as charged in Count Ten.

This evidence is appropriate Rule 404(b) evidence to establish Defendant's intent. The evidence is relevant to the government's argument that Defendant intended to have International pay for his personal expenses, including his wife's birthday party. Given the similarity of this evidence to the scheme in Count Ten, it is close enough in time with the December 2000 birthday party for Defendant's wife charged in Count Ten. *See e.g., United States v. Torres*, 977 F.2d 321, 327 ("two years is plainly recent enough when the acts are so alike"). This evidence is therefore admissible under Rule 404(b).

Defendant Black counters that he, his wife, and Dr. Kissinger were all directors of Hollinger, thus it was appropriate for Hollinger to pay for "entertainment-type expenses of its directors." Defendant is free to make such a factual argument to the jury.

## VIII. International's Charitable Giving

The government seeks to introduce evidence of Defendant Black's alleged activities

14

regarding International's charitable contributions. The government claims that Defendant Black did not comply with the established donation parameters of several of its publications. It further asserts that Defendant Black usurped public credit for International's charitable giving, and even had buildings named after him for International's contributions.

Even if the government's assertions are correct, such evidence is not relevant to the issues in this case. It does not demonstrate Defendant Black's intent regarding any of the charges in the Information, and is not sufficiently similar to the charged conduct. Furthermore, the evidence fails under Rule 403 because any potential probative value is substantially outweighed by the danger of unfair prejudice from the argument that Defendant is abusing charitable donations for his own personal benefit by usurping public credit. Accordingly, the government's motion is denied.

## IX. Personal Shopping Expenses

The government contends that evidence that International paid for personal expenditures of Defendant Black's wife – Barbara Black. These expenses included the purchase of handbags for $2,463, jogging attire for $140, opera tickets for $2,785, stereo equipment for the New York apartment for $828, silverware for the corporate jet for $3,530, summer drinks for $24,950, and refurbishment of a Rolls Royce for $90,000. The government intends to prove Defendant Black's knowledge of these personal expenses through e-mails to Defendant from his wife. The government argues that these expenditures are direct evidence of the scheme charged in Count Ten, and furthermore, under Rule 404(b) establish Defendant Black's intent and pattern of conduct regarding International's money.

This evidence of Defendant's use of International's money to pay for personal expenses,

including those of his wife, is direct evidence of the wire fraud scheme charged in Count Ten. It is evidence that Defendant improperly used International's money by abusing certain perquisites and having International pay for personal items. It is separately admissible under Rule 404(b) to demonstrate Defendant's intent, knowledge and plan regarding the perquisites.

Defendant's argument that the evidence is unduly prejudicial because Mrs. Black "has sometimes been a lightening rod of controversy" is unpersausive. To the extent Defendant is concerned about a juror's advanced feelings regarding Mrs. Black, voir dire of the panel members during jury selection will address this issue.

**X.      Insider Trading Allegations**

The government seeks to introduce evidence that in 1998 Defendants Black and Boultbee engaged in insider trading in an effort to increase International's share price during an underwriting. The government asserts that Defendants Black and Boultbee, along with co-schemer Radler, – through Ravelston Corporation – agreed with Brascan (a Canadian company) to have Brascan purchase shares of International in advance of the underwriting in exchange for Defendant Black guaranteeing the downside, interest rate and profit on the shares. The government claims that Defendants Black and Boultbee, co-schemer Radler, and Brascan ultimately profited from the deal. The government concludes that this evidence of Defendants' decision to circumvent the securities laws is probative of Defendant Black's and Boultbee's knowledge, intent, *modus operandi* and absence of mistake in committing the offenses charged in the Information because it demonstrates their disregard for their disclosure obligations. The Court disagrees. This evidence is not sufficiently similar to the charged conduct of the non-compete payments and the perquisite scheme, and therefore it is not admissible. Furthermore,

16

the insider trading allegations are likely to cause undue delay given their complexity in this already complex case.

## XI. Statements to the Court.

The government argues that the Court should admit – pursuant to Rule 404(b) – evidence of Defendant Black's statements to the Court in connection with bond determinations. Specifically, the government argues that Defendant Black initially filed a false affidavit in connection with his bond, and only corrected it after ordered by the Court on June 26, 2006 to file a supplemental affidavit. According to the government, this evidence "is relevant under 404(b) to demonstrate Black's intent to report the value of his assets based no[t] on accurate and truthful information, but based instated on what suits his overall strategic purpose." The government claims that this evidence will contradict Defendant Black's argument that he was not aware of the value of the apartment in New York and that he did not make a simple mistake. The Court disagrees.

The connection between Defendant Black's submissions for purposes of bond and his alleged intent and absence of mistake in the purchase of the New York apartment at issue in the Information is tenuous, at best. The government's request is denied.

## XII. Jury Instructions

Finally, the Court will appropriately instruct the jury regarding evidence admitted pursuant to Rule 404(b). *See United States v. James*, 464 F.3d 699, 711 (7th Cir. 2006). As the Seventh Circuit has made clear, it is assumed that juries follow a court's instructions. *Id.*

17

## **CONCLUSION**

The government's Rule 404(b) motion is granted in part and denied in part.


Dated: February 7, 2007                                       ENTERED

                                                                            _____
                                                                             AMY J. ST. EVE
                                                                             United States District Court Judge